UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

MARVIN POLLACK

Plaintiff,

- against-

10 CV 2402 (RPP)

**OPINION AND ORDER**

HOWARD HOLANCHOCK, Former Director
of MHFPC; MICHAEL HOGAN, Commissioner
of OMH; and PEGGI HEALY, Director of MHFPC,

Defendants.
-----------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/13/11

**ROBERT P. PATTERSON, JR., U.S.D.J.,**

By motion dated June 8, 2011, Defendants move for a judgment on the pleadings

pursuant to Federal Rule of Civil Procedure Rule 12(c) dismissing all claims asserted by

Plaintiff, *pro se*, in his Complaint.  Plaintiff is currently committed to the Mid-Hudson Forensic

Psychiatric Center ("MHFPC").  Since June 8, 2011, Plaintiff has submitted many letters to the

Court complaining of a lack of promptness in complying with his demands for various services

and delays by the librarians and employees of MHFPC in obtaining access to legal materials on

the internet and in the delivering and forwarding of his legal correspondence.  Plaintiff has failed

to submit any papers which, even most liberally construed, are regarded as responding to

Defendants' motion or the grounds set forth therein although he has acknowledged receipt and

over 90 days have passed.

I.       **Background**

MHFPC is a secure adult forensic psychiatric inpatient facility operated by the New York

State Office of Mental Health ("OMH").  Plaintiff contends that on February 14, 2007, officials

and former officials of OMH and MHFPC denied the residents access to the courts by

discontinuing the law library and access to legal materials on the internet. (Compl. II, ¶¶ 1-4.)

Plaintiff states that Defendants "decree" that he must use the New York Mental Hygiene Legal

Service ("MHLS") for his legal pursuits. (Compl. ¶ 5.)

The Complaint pleads three causes of action. First, that Defendants terminated access to

legal materials in violation of the Equal Protection Clause of the Fourteenth Amendment of the

Constitution. Plaintiff claims that persons in prison are not "as severely restricted" as residents

in New York Mental Health facilities. To wit, Defendants violated Plaintiff's rights by throwing

out MHFPC's law books and eliminating internet law access.[1] (Compl. III, ¶¶ 1-4.) Second, that

by discarding the law books and terminating internet access to legal materials, Defendants have

denied Plaintiff meaningful access to the courts. (Id. ¶¶ 5-8.) Third, that by eliminating access to

law books and internet legal materials, Defendants hindered Plaintiff's ability to represent

himself, which Plaintiff denominated as retaliation. (Id. ¶¶ 9-12.)

Plaintiff seeks declaratory and injunctive relief and "compensatory damages for denial of

meaningful access to the Courts, Free Speech and hindrance (retaliation) of aforementioned legal

cases." (Compl. V, ¶¶ A-B.) Plaintiff also seeks punitive damages and attorney's fees. (Id. ¶¶ C-

E.) On July 30, 2010, Defendants filed an Answer denying knowledge or information sufficient

to form a belief as to the truth of most of the allegations. Defendants deny that they engaged in

any acts of retaliation and refer to the Guidelines for Patient Requests for Internet Information

dated March 27, 2007. (Answer ¶ 8.) Defendants deny paragraphs 8, 13, 14, and 15 of Part II of

the Complaint and deny paragraphs 2, 4, 6, 8, and 10 of Part III of the Complaint. Defendants

assert as affirmative defenses that their actions are protected by the Eleventh Amendment of the

---

[1] At MHFPC patients are allowed internet access by the librarian to materials on the internet after clearance by their physician if such access will not interfere with their treatment. It is not contended that Plaintiff's mental condition limits his access to law materials in this case.

Constitution in so far as they acted in their official capacity and plead qualified immunity in so far as they are charged with acting in their individual capacity. (Id. ¶ 33, 35.) Defendants also assert that the Complaint fails to state a claim upon which relief can be granted and that the action is barred by the applicable statutes of limitation. (Id. ¶ 36, 37.) Defendants contend that the alleged conduct was in conformity with applicable statutory and regulatory provisions and the discretionary authority of Defendants. (Id. ¶ 38.) Lastly, Defendants assert that they lack any personal involvement with the alleged violations of Plaintiff's constitutional rights. (Id. ¶ 39.)

## II.    Discussion

### *The Court's September 9, 2010 Order*

On August 23, 2010, Plaintiff wrote to the Court seeking preliminary relief on his request for access to legal research. (See ECF No. 10.) On September 9, 2010, following a hearing on the same day, the Court issued an order to MHFPC which read as follows:

> Mid Hudson Psychiatric Center having eliminated its law library and because Mental Hygiene Legal Services ("MHLS") does not represent Plaintiff in this proceeding, it is hereby ordered, as temporary relief, that Defendants are to provide Plaintiff Marvin Arnold Pollack with the free internet access of Findlaw and Wikipedia Legal Research as well as access to fax, legal correspondence, (incoming and outgoing) to conduct the ongoing litigations to which he is a party. This order is without prejudice to Defendants moving to vacate this order upon a showing of good cause.

(Order dated September 9, 2010, ECF No. 12.)

### *The Defendants' Arguments*

As an initial matter, Defendants argue correctly that Plaintiff is barred from suing Defendants in their official capacity by the Eleventh Amendment. See Kentucky v. Graham, 473 U.S. 159, 169 (1985). Defendants also argue that Plaintiff does not allege that Defendants were personally involved in the alleged wrongdoing. (Defendant's Memorandum of Law in Support of

3

Motion for Judgment on the Pleadings ("Def. Mem.") at 8.)  However, the Court is required to construe the *pro se* Complaint liberally.  As such, it defies common sense that Defendants Hogan, as Commissioner of OMH, and Holanchock, as Director of MHFPC until September 5, 2007, did not participate in the decision to close the law library at MHFPC, deny access to internet legal materials and refer Plaintiff to MHLS for his legal pursuits. Furthermore, Defendants Hogan and Healy are alleged to have not responded to Plaintiff's complaints regarding the termination of the law library. (Compl. II, ¶¶ 6-8.)

Defendants also argue that Plaintiff has not established that the actions were part of a policy or custom under which unconstitutional practices occurred. (Def. Mem. at 10.) Defendants cite Lewis v. Casey, 518 U.S. 343, 351 (1996), in support of their contention that "the right of access to the courts does not entail a free-standing right to a law library." (Def. Mem. at 10.)  While their citation is accurate, it does not reflect the decision of the Supreme Court accurately.  In Bounds v. Smith, 430 U.S. 817 (1977), the Court's opinion by Mr. Justice Marshall held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from prisoners trained in the law." Bounds, 430 U.S. at 828.  The Court in Bounds cites Younger v. Gilmore, 404 U.S. 15 (1971); Johnson v. Avery, 393 U.S. 483 (1969); and Wolff v. McDonell, 418 U.S. 539 (1974), in holding that such services are constitutionally mandated. Id. at 817, 823.  Mr. Justice Marshall writing for the Court noted that while:

> [A] Habeas Corpus petition or a civil rights complaint need only set forth facts giving rise to the cause of action . . . it hardly follows that a law library or other legal assistance is not essential to frame such documents.  It would verge on incompetence for a lawyer to file an initial pleading without researching such issues as jurisdiction, venue, standing, exhaustion of remedies, proper parties

plaintiff and defendant, and types of relief available. Most importantly of course, a lawyer must know what the law is in order to determine whether a colorable claim exists, and if so, what facts are necessary to state a cause of action. If a lawyer must perform such preliminary research, it is no less vital for a pro se prisoner.

Id. at 825-26.

In Lewis, the Supreme Court clarified its decision in Bounds by stating that:

Bounds does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip and fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

Lewis, 518 U.S. at 355 (emphasis in original). The Court held that Bounds "guarantees no particular methodology but rather the conferral of a capability—the capability of bringing contemplated challenges to sentences of conditions of confinement before the courts. When any inmate . . . shows an actionable claim of this nature, which he desired to bring has been lost or rejected or that the presentation of such a claim is currently being prevented . . . he demonstrates that the State has failed to furnish 'adequate law libraries or adequate assistance from persons trained in the law.'" Id. at 356 (citing Bounds, 430 U.S. at 828).

The Complaint here charges that Plaintiff has been deprived of a law library, access to internet legal materials, and that MHLS provides "no civil rights, Habeas, or criminal help."[2] (Compl. II, ¶ 5.) Accordingly, Plaintiff's allegations in the Complaint do allege that Defendants have deprived him of "adequate law libraries or adequate assistance from persons trained in the law." Bounds, 430 U.S. at 828.

---

[2] The lack of such assistance was confirmed by Plaintiff and he offered the names and addresses of MHLS attorneys in charge to confirm his contention. This was not disputed by Defendants at the hearing on September 9, 2010.

Defendants contend that Plaintiff, as a patient at a mental health facility, is not similarly situated to prison inmates for the purpose of Equal Protection. (Def. Mem. at 11.) Defendants argue that patients at OMH facilities are being treated for mental illness and will be released as soon as they are well enough to be discharged. See N.Y. Mental Hygiene Law §§ 9.13, 9.27, 9.33, 9.35, 9.37, 9.39. Additionally, Defendants note that patients, unlike prisoners, have access to MHLS attorneys in challenging their detention and for other legal assistance. (Def. Mem. at 12.)

MHLS is an organization whose attorneys provide legal services and advice to persons receiving care at inpatient and community-based facilities for the mentally disabled. See N.Y. Mental Hygiene Law § 47.01. This law states MHLS is authorized to represent individuals in judicial and administrative proceeding regarding admission and treatment and that MHLS is authorized to represent persons in other matters affecting the civil liberties while in the care of OMH facilities. Id. § 47.03(a)-(b). MHLS is authorized to inform "patients or residents . . . of the availability of other legal resources which may be of assistance in matters not directly related to the admission, retention, and care and treatment of such patients or residents." Id. § 47.03(c). In addition, MHLS is authorized to take "any legal action deemed necessary to safeguard the right of any patient or resident to protection from abuse or mistreatment . . . ." Id. § 47.03(e).

Thus, the statute authorizes MHLS to represent the Defendant in matters relating to his "admission, retention, and care and treatment," however, it need only "inform" patients of other legal resources available in matters not relating to admission, retention, care and treatment. The statute is unclear, however, if MHLS is authorized to provide legal assistance to persons challenging the grounds of their criminal convictions in the State of New York, or the grounds

on which they were placed in the custody of an OMH facility or on other civil rights actions. See Lewis, 518 U.S. at 355.

Defendants argue that because of Plaintiff's "access to MHLS attorneys for representation in challenging their detention and for other legal assistance," that he is not similarly situated to a prison inmate under Equal Protection analysis.[3] (Def. Mem. at 12.) This argument focuses on access to challenge one's status as mentally impaired and avoids the issue of whether sufficient legal assistance is provided to allow an inmate or an OMH resident to bring civil rights claims or actions in the nature of habeas corpus to challenge the proceedings which led to the individual's incarceration or detention. See Lewis 518 U.S. at 355. Plaintiff alleges in the Complaint that MHLS does not provide such legal assistance. (Compl. II, ¶ 5.)

### *Plaintiff's Remaining Claims*

Plaintiff's claim that his Sixth Amendment right to a speedy trial has been violated is without merit. Defendants correctly argue that it should be dismissed because the Sixth Amendment only applies to criminal prosecutions. Fitzgerald v. Cawley, 368 F. Supp. 677, 680-81 (S.D.N.Y. 1973).

Similarly, Defendants correctly argue that Plaintiff's retaliation claims should be dismissed since there are no allegations that Defendants took action against him because of protected speech. All of Defendants alleged actions in paragraphs 3-7 of the Complaint occurred before he requested "reinstatement" of the law library and legal research materials from the internet. See Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003) (requiring a causal connection between the protected speech and the adverse action).

---

[3] N.Y. Mental Hygiene Law § 47.03(c) does authorize MHLS to inform patients or residents of the availability of other legal resources, but whether it does so in a meaningful manner is a matter not addressed in this motion.

Defendants claim that they are entitled to qualified immunity is denied. The issue of qualified immunity depends on whether Defendants made appropriate inquiry of MHLS as to the scope of legal services provided to patients at MHFPC in the event the law library and internet legal access were eliminated and the nature of the reply from MHLS. See Pearson v. Callahan, 555 U.S. 223, 239 (2009) ("when qualified immunity is asserted at the pleading stage, the answer to whether there was a violation may depend on a kaleidoscope of facts not yet fully developed." (quoting Dirrane v. Brookline Police Dept., 315 F.3d 65, 69–70 (1st Cir. 2002))).

### Plaintiff Lacks Standing to Bring this Action

Defendants' main argument, however, is that the Complaint fails to demonstrate that Plaintiff has standing to bring his action. The Complaint merely alleges that Plaintiff would like to represent himself at "Mental Hygiene hearings," a "New York Criminal hearing" and at "Federal Civil Rights hearings," but cannot properly prepare without a law library or access to internet legal materials. (Compl. II, ¶¶ 9-12.) Plaintiff's claims that he would like to represent himself in these federal and state hearings are vague and do not show that they qualify for the protections provided in Lewis. See Lewis, 518 U.S. at 354-55. Thus, the Complaint does not allege sufficiently that Plaintiff has standing to bring this action. An individual must show that lack of access to the courts has caused actual injury. Id. at 355. An individual cannot claim actual injury simply because he believes that there should be a law library or that the current law library is sub-standard. Id. at 351. A person must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." Id.

Nevertheless, by virtue of the numerous letters from Plaintiff which the Court has received since September 2010, the Court believes that at some point in time Plaintiff has initiated or responded to litigation in this District and in the courts of the State of New York, but

8

is unaware of the exact nature of such actions.  Accordingly, the Plaintiff will have thirty (30)

days from the date of this opinion to advise the Court of any actual injury he has sustained due to

the actions of Defendants alleged in this case.  Plaintiff must demonstrate how these actions have

injured his capacity to litigate in the proceedings attacking his incarceration, directly or

indirectly, or proceedings relating to the conditions of his confinement. See id. at 355.

## III.    Conclusion

Plaintiff must advise the Court of the title of the legal proceeding, the nature of the

proceeding, and the date and court in which it was commenced.  Plaintiff's failure to provide the

Court with this information within thirty days (November 15, 2011) will result in the dismissal of

this action for lack of standing.

IT IS SO ORDERED.

Dated:  New York, New York

October 13 2011

Robert P. Patterson, Jr.
U.S.D.J.

**Copies of this Order faxed to**:

*Pro se Plaintiff:*

Marvin Arnold Pollack
Mid-Hudson Forensic Psychiatric Center
Route 17-M, 2834
P.O. Box 158
New Hampton, NY 10958

*Counsel for Defendants:*

Michael Edward Peeples
New York State Office of the Attorney General
120 Broadway
New York, NY 10271
212-416-8771
Fax: (212) 416-6075

Nathan Arthur Brill
Attorney General of the State of New York
120 Broadway
New York, NY 10271
(212) 416-8636
Fax: (212) 416-6075