UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MARVIN POLLACK

                               Plaintiff,

      - against-                                  10 CV 2402 (RPP)

**OPINION AND ORDER**

HOWARD HOLANCHOCK, Former Director
of MHFPC; MICHAEL HOGAN, Commissioner
of OMH; and PEGGI HEALY, Director of
MHFPC,

                               Defendants.
-------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.,**

      By Opinion and Order dated October 13, 2011, in connection with Defendants' motion for judgment on the pleadings in this action for lack of standing, the Court held that in view of the temporary injunctive relief granted, Plaintiff had failed to show that his alleged lack of access to the courts (i.e. no law library) has resulted in any "actual injury" to his constitutional rights, as articulated by Lewis v. Casey, 518 U.S. 343, 355 (1996). See Pollack v. Holanchock et al., No. 10 CV 2402 (RPP), 2011 WL 4867558 (S.D.N.Y. Oct. 13, 2011). Nevertheless, before rendering a final decision, because the Court had become aware in the course of this proceeding that Plaintiff had initiated other litigation in both New York State courts and in this district, the Court ordered Plaintiff to advise the Court of the title of any pending legal proceeding involving Plaintiff, the nature of the proceeding, and the date and court in which it was commenced, so that the Court could determine whether Plaintiff had in fact suffered "actual injury" due to the actions of the Defendants. Id. at *5. By letter dated November 8, 2011, Plaintiff advised the Court of ten

legal proceedings in which he was currently a party. (See Plaintiff's letter dated Nov. 8, 2011 ("Pl.'s letter"), ECF No. 124.)

In addition, Plaintiff has submitted numerous letters to the Court during the course of this litigation complaining about various issues relating to the conditions of his confinement at the Mid-Hudson Forensic Psychiatric Center ("MHFPC"), including, inter alia, frequency of mail delivery, access to legal supplies, and the confiscation of some of Plaintiff's personal effects. These allegations, which were not raised in the Complaint, will nonetheless be addressed by the Court, as Plaintiff is proceeding pro se.

For the following reasons, Defendant's motion for judgment on the pleadings is denied.

## I. Plaintiff's Legal Proceedings

The litigation that is currently the subject of this motion is identified as action "1" in Plaintiff's letter. (Pl.'s letter at 3.) Plaintiff identifies action "2" as a petition for a writ of habeas corpus that was filed, pro se, on August 23, 2010 and assigned to Judge Koeltl.[1] (Pollack v. Paterson et. al, No. 10 Civ. 6297, ECF No. 2.) The petition involves three applications by the Clinical Director of MHFPC ("Director") authorizing continued retention of Plaintiff at MHFPC pursuant to N.Y. Crim. Proc. Law ("CPL") § 330.20(8) which Plaintiff is contesting.[2] On

---

[1] Plaintiff later amended his petition on November 10, 2011. (No. 10 Civ. 6297, ECF No. 24.)

[2] Plaintiff lists these retention applications as actions "7" and "8." (Pl.'s letter at 3, 8.) The Director of MHFPC initiated the first retention application in September 2006. (Declaration of Michael Peeples, Assistant New York State Attorney General ("Peeples Decl."), dated November 22, 2011, ¶ 5.) Prior to the initial September 2006 application, Plaintiff had moved for leave to proceed pro se and forgo legal representation by the Mental Hygiene Legal Service ("MHLS") of the Second Judicial Department, but his motion was denied by the trial court. See In re Marvin P., 858 N.Y.S.2d 904, 904 (2d Dept. 2008). Plaintiff appealed this denial, but the Appellate Division, Second Department, upheld the trial court's decision "as no appeal lies as of right or by permission from an interlocutory order in a CPL 330.20 proceeding." Id. The September 2006 retention application is still pending in State Supreme, Orange County. (Peeples Decl. ¶ 5.) In August 2007, during the pendency of the first retention application, the Director of MHFPC once again applied for retention of Plaintiff at MHFPC pursuant to CPL § 330.20(9). Plaintiff again moved to proceed pro se, albeit with standby counsel, but was denied by the trial court. Plaintiff was again represented by MHLS. (Declaration of Robert J. Conflitti, Assistant New York State Attorney

December 23, 2011, Judge Koeltl accepted the Report and Recommendation of Magistrate Judge Cott and denied Plaintiff's petition on the grounds that Plaintiff had not fully exhausted his state court remedies. See Pollack v. Paterson et. al, No. 10 Civ. 6297 (JGK), 2011 WL 6747409 (S.D.N.Y. Dec. 23, 2011). Plaintiff's remaining actions[3] have all been filed pro se, but they are not "original actions seeking new trials, release from confinement, or vindication of fundamental civil rights," as required by Bounds v. Smith, 430 U.S. 817, 827 (1977).

In the instant Complaint filed on March 17, 2010, Plaintiff alleges that he would like to proceed pro se at "Mental Hygiene hearings," "a New York Criminal case," and a "Federal Civil Rights case."[4] (Compl. at II.B ¶¶ 9-12.) Plaintiff states that MHFPC requires him to use the Mental Hygiene Legal Service ("MHLS") for all his "legal pursuits." (Compl. at II.B ¶ 5.)

---

General ("Conflitti Decl."), dated February 4, 2011, ¶ 5.) Plaintiff appealed this decision and was once again denied by the Appellate Division, Second Department. Plaintiff subsequently sought leave to appeal to the New York Court of Appeals but was denied as "the order sought to be appealed from does not finally determine the proceeding within the meaning of the Constitution." In re Marvin Pollack, 14 N.Y.3d 836, 836 (N.Y. 2010). The August 2007 retention application is also still pending in State Supreme, Orange County. (Peeples Decl. ¶ 5.) In July 2009, the Director of MHFPC applied for retention of Plaintiff at MHFPC for a third time pursuant to CPL § 330.20(9). Plaintiff was represented by MHLS until October 9, 2009 when he threatened to sue MHLS over an alleged conflict of interest in their representation of him. (Conflitti Decl. ¶ 5.) MHLS asked to be relieved of its representation of Plaintiff in the retention proceedings and subsequently the court appointed counsel to represent Plaintiff. (See id. ¶¶ 5-10.) The July 2009 retention application is also still pending in State Supreme, Orange County. (Peeples Decl. ¶ 5.) Most recently in September 2011, the Director once again applied for retention of Plaintiff. (Id.) Since October 2009, State Supreme, Orange County has appointed three other attorneys to represent Plaintiff in the retention proceedings. Plaintiff is currently represented by Geoffrey Chanin, Esq. in each of the aforementioned retention proceedings. (Id. ¶ 11.) Plaintiff is also the subject of a June 2011 application by the Director to administer medication over objection in which he is also represented by Geoffrey Chanin. (Id. ¶¶ 6, 11.)

[3] Plaintiff's action "4" and action "5" were filed on September 22, 2011 in State Supreme, Orange County. Plaintiff identifies action "4" as a medical malpractice claim without going into further detail. (Pl.'s letter at 3, 8.) Plaintiff states the nature of action "5" was a "constitutional violation," but does not provide any further information regarding the claim. (Id.) The Court has obtained the Order deciding Plaintiff's application to proceed as a poor person which describes the nature of the action as "alleged violations of his free exercise of religion and reckless endangerment." (Decision and Order dated October 19, 2011, Onofry, J.) Plaintiff's action "6" is identified by Plaintiff as a state habeas claim brought in October 2006 against MHLS for removing a case from the court calendar in disregard of his wishes to have the case restored. (Id.) Plaintiff does not provide any further information about this case. Lastly, Plaintiff's action "9," as stated by Plaintiff, has been commenced against him in the Town Court of Goshen for the "alleged harassment" of a "mentally ill 'patient.'" (Id. at 9.) Plaintiff does not provide an index number to this action.

[4] The Court construes "Mental Hygiene hearings" to mean the retention hearings addressed by Judge Koeltl.

3

Plaintiff, however, alleges that "MHLS decrees they only do Mental Hygiene work" and will not provide him with "civil rights, habeas, or criminal help." (Id.) Therefore, Plaintiff states that he possesses "no case history or knowledge to prepare" for his legal proceedings without the assistance of a law library. (Id. ¶¶ 9-12.)

## II.     Applicable Law

Plaintiff argues that a law library is constitutionally required under all circumstances for those held in mental health care facilities just as it is required for prisoners in correctional facilities. Plaintiff's interpretation of the case law is overbroad. Bounds did not create a freestanding right to a law library. Lewis v. Casey, 518 U.S. 343, 354-55 (1996). Rather, the law requires only that those committed be provided the resources needed to attack their sentence or the conditions of their confinement. See Bounds, 430 U.S. at 827. "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Lewis, 518 U.S. at 354-55 (emphasis in original). Thus, to establish a claim of inadequate access to the courts under Bounds and Lewis, a plaintiff must show "'that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim' – for example, by demonstrating that he has been unable to file a complaint or has had a complaint dismissed for failure to observe a technicality." Benjamin v. Fraser, 264 F.3d 175, 184 (2d Cir. 2001) (quoting Lewis, 518 U.S. at 351).

The Supreme Court has held that law libraries are not the only way to provide for meaningful access to the courts. See Bounds, 430 U.S. at 830. While making law library facilities available to those incarcerated or committed is "one constitutionally acceptable method to assure meaningful access to the courts," id. at 830, providing some degree of professional or

quasi-professional legal assistance to individuals is a proper alternative method to providing a law library. Id. at 831.

In this case, the Court on September 9, 2010, issued temporary injunctive relief granting Plaintiff "internet access to free legal research websites such as Findlaw and Wikipedia Legal research, as well as access to both incoming and outgoing fax and legal correspondence."

### III.  Standing

Defendants' motion for judgment on the pleadings argues that Plaintiff lacks standing to bring this Complaint because (1) he has not suffered actual injury and (2) MHLS is an adequate substitute of a law library. Challenges to standing are to be determined as of the time the action is commenced. See Friends of Earth, Inc. v. Laidlaw Env'tl Servs. (TOC) Inc., 528 U.S. 167, 189 (2000); see also Jones v. Goord, 435 F. Supp. 2d 221, 225 (S.D.N.Y.2006) ("standing is determined at the time a complaint is filed.")

#### 1.  MHLS

In his Complaint, Plaintiff alleges that MHFPC denied him access to the courts by referring him to MHLS rather than providing him with a law library. N.Y. Mental Hygiene Law section 47.01 states that MHLS is required to provide legal services and legal advice to persons receiving care at inpatient and community-based facilities for the mentally disabled. MHLS is a part of the judicial branch of New York and is independent of the New York State Office of Mental Health. Id. There is an MHLS office in every judicial department in New York. Id. N.Y. Mental Hygiene Law provides, in relevant part, that MHLS shall:

>  (a) study and review the admission and retention of all patients or residents which shall include a review of the willingness of the patient or resident to remain in his or her status and the determination of the facility director as to suitability of such status, as provided for by this chapter;

> (b) inform patients or residents and, in proper cases, others interested in such persons' welfare of procedures for admission and retention and of the patients' or residents' right to have judicial hearing and review, to be represented by legal counsel, and to seek independent medical opinion.
>
> (c) provide legal services and assistance to patients or residents and their families related to the admission, retention, and care and treatment of such persons, and to inform patients or residents, their families and, in proper cases, others interested in the patients' or residents' welfare of the availability of other legal resources which may be of assistance in matters not directly related to the admission, retention, and care and treatment of such patients or residents.

Id. § 47.03(a)-(c). MHLS attorneys must be "granted access at any and all times to any facility . . . and to all books, records, and data . . . deemed necessary for carrying out its functions, powers and duties." Id. § 47.03(d).

### 2. Plaintiff's State Retention Proceedings

Retention proceedings and admission proceedings are the raison d'être of MHLS. Plaintiff was represented at the retention hearings by MHLS until October 9, 2009, when he threatened to sue MHLS over an alleged conflict of interest in their representation of him. (Conflitti Decl. ¶ 5.) Thereafter, MHLS asked to be relieved of its representation of Plaintiff in the retention proceedings, and subsequently the court appointed outside counsel to represent Plaintiff. (See id. ¶¶ 5-10.) With regard to MHFPC's retention proceedings involving Plaintiff, representation of Plaintiff by MHLS was a constitutionally acceptable alternative to a law library under Bounds. Furthermore, since Plaintiff's threat to sue MHLS, Plaintiff has been represented by appointed counsel in his pending retention proceedings and in the administration of medication over objection proceeding, (Peeples Decl. ¶ 5), also a constitutionally acceptable alternative to a law library. As Plaintiff has been represented by counsel in one form or another throughout the proceedings, Plaintiff has not suffered actual injury by being deprived of a law library with respect to the retention applications.

### 3. The Instant Action and Plaintiff's Pending Habeas Corpus Petition

The Complaint states that Plaintiff "would like to represent himself at 'Mental Hygiene hearings,' a 'New York Criminal case' and 'Federal Civil Rights hearings' but has no case history or knowledge to prepare for it without a Law Library" (Compl. at II.B. ¶ 12). Following the filing of the instant Complaint on March 17, 2010, Plaintiff did in fact file a civil rights claim without the assistance of a law library or a constitutionally acceptable substitute. Specifically, Plaintiff's pros se habeas petition pending before Judge Koeltl directly challenged his retention at MHFPC. That petition was filed on August 23, 2010, (No. 10 Civ. 6297, ECF No. 2), prior to this Court's September 9, 2010 grant of temporary injunctive relief providing Plaintiff with access to free internet legal research, fax, and legal correspondence. (No. 10 Civ. 2402, ECF No. 12.) On November 10, 2010, Plaintiff, now with the benefit of the Court's temporary injunctive relief, filed an amended habeas petition before Judge Koeltl. (Id., ECF No. 24.)

The Court in Lewis noted that "Depriving someone of an arguable (though not yet established) claim inflicts actual injury because it deprives him of something of value – arguable claims are settled, bought, and sold." Lewis, 518 U.S. at 353 n.3. Plaintiff must only demonstrate that "the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." Id. at 351. Here, Defendants have not provided the Court with any evidence or affidavits stating that MHLS will represent Plaintiff in a habeas proceeding or in any other civil rights action, nor did they deny Plaintiff's allegations contained in the Complaint or during a hearing before the Court that MHLS would not represent him in such proceedings. (See Tr. of Sept. 9, 2010 Hr'g at 4-9.)

Plaintiff was burdened with actual injury at the time that his original habeas petition was filed, as he was not provided with a law library or adequate legal assistance in challenging his

7

retention at MHFPC until this Court's order of September 9, 2010. If the Court were to dismiss this action, its September 9, 2010 order awarding Plaintiff temporary injunctive relief would not remain in effect, and Plaintiff would once again be without access to a law library to challenge his retention at MHFPC or any unconstitutional conditions of his confinement. Accordingly, the Court denies Defendants' motion for judgment on the pleadings.

**4.      Access to Legal Supplies and Legal Mail**

Plaintiff has sent numerous letters to the Court alleging that MHFPC has interfered with his access to legal supplies such as pens, paper, stamps etc. With regard to legal supplies, "[i]t is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents . . . and with stamps to mail them," Bounds, 430 U.S. at 824-825, however, the state is entitled to adopt reasonable regulations in light of budgetary considerations. Chandler v. Coughlin, 763 F.2d 110, 114 (2d Cir. 1985). Therefore, Plaintiff is only entitled to a reasonable amount of legal supplies (including fax and copy machine access) so that he may adequately conduct his legal proceedings. Plaintiff is not entitled to unfettered access to legal supplies, copies or fax machine access. Similarly, Plaintiff letters complain about the promptness of Defendants' compliance with his requests for internet access.

Plaintiff has also alleged that MHFPC has interfered with both his incoming and outgoing legal mail. The standard for interference with legal mail with respect to civilly committed individuals was recently articulated by the Second Circuit in Ahlers v. Rabinowitz, No. 10-1193, 2012 WL 1142279 (2d Cir. April 6, 2012). Therein, the Circuit held that "a [civilly committed] patient must show regular and unjustifiable interference with incoming legal mail; the actions of facility staff in restricting civilly committed individuals' access to legal mail are justified if they advance or protect the state's interest in security, order, or treatment and the restrictions imposed

8

are no greater than necessary to advance the governmental interest involved." Id. at *7. Defendants have repeatedly denied that they are interfering with Plaintiff's legal mail other than as permitted under Ahlers. Indeed, the Court continues to receive Plaintiff's voluminous correspondence by both mail and fax. Plaintiff has not adequately demonstrated that Defendants are interfering with his access to either incoming or outgoing legal mail or the storage of his legal documents other than as permitted by Ahlers.

Furthermore, despite the state court's release of MHLS from representing Plaintiff in his retention proceedings, MHLS continues to advocate for Plaintiff with respect to his religious rights at MHFPC, his phone access at MHFPC, his ability to possess personal legal materials, and his access to mail, as is their charge under the Mental Hygiene Law.[5] (See Peeples Decl., Ex. B, C, D.) Under these circumstances, the Court finds that Plaintiff has failed to demonstrate that MHLS has neglected to respond to his complaints regarding those conditions of his confinement at MHFPC. To the extent that Plaintiff has made any showing, he has failed to demonstrate that his claims rise to a magnitude that constitute actual interference with Plaintiff's constitutional rights.

## IV. Conclusion

Defendants' motion for judgment on the pleadings is denied. At the time the instant action was commenced, Plaintiff wanted to file a civil rights action but did not have access to a law library, or an adequate substitute, and MHLS informed him that they would not represent him in a habeas proceeding or a civil rights proceeding as they only do "mental hygiene work". (Compl. at II.B ¶ 5.) The dismissal of this action and the temporary injunctive relief granted by

---

[5] Dawn Mulder, the principal attorney for MHLS, Second Judicial Department, addressed these issues in letters to Peggi Healy, Executive Director of MHFPC, dated Aug. 24, 2011 and Donna Hall, Acting Associate Commissioner, OMH, dated Sept. 19, 2011. (Peeples Decl., Ex. B, C, D.)

the Court may result in Plaintiff once again lacking an adequate law library or reasonable substitute should Plaintiff challenge his retention at MHFPC or some other civil rights claim protected by the constitution.

The Court urges the parties to reach a settlement in this case. The law is well settled with respect to Plaintiff's right of access to the courts. Plaintiff must be provided with a law library or constitutionally acceptable substitute to attack his sentence or conditions of his confinement. See Bounds, 430 U.S. at 827. Defendants should be able to draft a consent order which will be agreeable to both parties and also terminate this action, thus preserving for Plaintiff the rights he obtained in the Court's Order of September 9, 2010. The consent order could mirror the language of the Court's September 9, 2010 Order granting Plaintiff internet access to free legal research websites such as Findlaw and Wikipedia Legal Research, as well as access to both incoming and outgoing legal correspondence so that Plaintiff may continue to attack his retention at MHFPC as well as any unconstitutional conditions of his confinement. Since MHLS already monitors and advocates for some of Plaintiff's rights and privileges at MHPFC, see supra p. 9, it would seem appropriate for MHLS to agree to advocate for Plaintiff, if necessary, with respect to reasonable compliance with that consent order in accordance with the principles set forth in Ahlers.

IT IS SO ORDERED.

Dated: New York, New York
      May 7, 2012

                                              Robert P. Patterson, Jr.
                                              U.S.D.J.

**Copies of this Order mailed/faxed to:**

*Pro se Plaintiff:*

Marvin Arnold Pollack
Mid-Hudson Forensic Psychiatric Center
Route 17-M, 2834
P.O. Box 158
New Hampton, NY 10958

*Counsel for Defendants:*

Michael Edward Peeples
New York State Office of the Attorney General
120 Broadway
New York, NY 10271
212-416-8771
Fax: (212) 416-6075

Nathan Arthur Brill
Attorney General of the State of New York
120 Broadway
New York, NY 10271
(212) 416-8636
Fax: (212) 416-6075